**ADAM HAT STORES, Inc., v. LEFCO et al.**
**No. 8026.**

Circuit Court of Appeals, Third Circuit.
Argued Oct. 19, 1942.
Decided Feb. 12, 1943.

102

Sylvan H. Hirsch, of Philadelphia, Pa. (Robert John Brecker, of Philadelphia, Pa., and Vogel & Vogel, of New York City, on the brief), for appellant.

Earl Jay Gratz, of Philadelphia, Pa. (Joseph Bell, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

This appeal grows out of the plaintiff's suit to enjoin the defendants from conducting their business under a certain style name or any similar name and for an accounting of profits and damages alleged to be due to the defendants' use of the particular business name.

The facts material to the questions here involved are as follows:

Since September 1924, the plaintiff, a corporation of the State of New York, has been continuously engaged in selling, at retail and wholesale throughout the United States, men's hats bearing the trade-mark and under the trade name of "Adam Hats" or "Adam". The defendants, all of whom are citizens of Pennsylvania, own and operate men's clothing stores in the cities of Philadelphia, Norristown, Chester, Wilmington and Trenton. Except for the store in Trenton, men's hats are among the apparel sold in these stores. In the indicated territory in which the defendants conduct their business, the plaintiff company owns and operates three stores and has ten other selling agencies.

In September 1920 (actually 1918 as revealed by the evidence), Arthur Lefco, one of the defendants, opened a store in Philadelphia under the name of "Charles Adams Company" where he sold men's custom tailored clothes under the brand name "Adams Clothes". Shortly thereafter he opened a like store in Trenton where he also used the same brand name. In the spring of 1923, Lefco, because of illness, sold these stores (but not the brand name) and retired from business. In the fall of the same year, his health having improved,

he reentered the men's clothing business under the name of "Clark's" and thereafter conducted like businesses under various names, viz., "Arthur & Kennedy", "Arthur, the Tailor", "Herman Tailoring" and "Herman & Company". In all of the stores operated under these names clothes bearing the brand name "Adams Clothes" were sold, but the name "Adams" was not reemployed as a business name until 1933. On September 9, 1933, Lefco opened a store in Philadelphia devoted exclusively to the sale of "Adams Clothes" under the business or trade name of "Adams Clothes".

On November 15, 1933, the plaintiff company wrote Lefco, protesting his use of the business name "Adams Clothes", and on February 27, 1934, filed a bill in equity in the Court of Common Pleas of Philadelphia County seeking to enjoin the defendants from using the name "Adams Clothes". A hearing was held in that suit on March 20, 1934, on the plaintiff's application for a preliminary injunction. At the conclusion of the hearing the plaintiff withdrew its preliminary application and on the following day discontinued the proceeding—a step which the defendants had indicated at the preliminary hearing they would resist. The defendants promptly petitioned the Court of Common Pleas to strike off the order of discontinuance. A rule was granted directing the plaintiff to show cause why the discontinuance should not be stricken from the record and on April 6, 1934, the court entered an order making the rule absolute. The plaintiff appealed and on February 4, 1935, the Supreme Court of Pennsylvania affirmed the order of the lower court and remitted the record for further proceedings. See Adam Hat Stores, Inc. v. Lefco et al., 317 Pa. 442, 176 A. 734. Thereafter, the plaintiff took no further action in that suit. Following the finality of the order refusing the plaintiff leave to discontinue the suit in the state court, the defendants opened other stores, viz., in Norristown on September 9, 1935; in Chester on March 4, 1936; in Wilmington on March 14, 1937; and in Trenton on September 9, 1939.

The plaintiff instituted the instant suit on October 11, 1939, resting jurisdiction on the diversity of the citizenship of the parties. On March 9, 1942, the District Court entered the order of dismissal from which the pending appeal was taken.

The trial court concluded, on the basis of its findings of fact, that the defendants' use of the business name "Adams Clothes" did not constitute an infringement of the plaintiff's trade name or unfair competition and also that the plaintiff was barred by laches, amounting to abandonment, from asserting a claim of injunctive relief. The findings of the trial court are supported by substantial evidence and, certainly, are not clearly erroneous. We are therefore under the necessity of accepting as conclusive the facts as found by the trial court. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In view of the appellant's contentions, a proper determination of the instant appeal turns upon whether the defendants are entitled to use the name "Adams Clothes" as their business name and, if not, whether the plaintiff is barred from asserting a right to the relief which it seeks.

As federal jurisdiction here depends upon diversity of citizenship, the matters of unfair competition in suit are to be adjudged according to local law (Pecheur Lozenge Co., Inc. v. National Candy Co., Inc., 315 U.S. 666, 667, 62 S.Ct. 853, 86 L.Ed. 1103)—in this instance, the law of Pennsylvania. So far as the matters of complaint occurred in that state, the relevant local law is to be ascertained by direct reference; otherwise, according to that state's rule of conflicts. See Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. However, we find no binding rule of decision by a court of Pennsylvania[1] as to whether the matters complained of were torts in Pennsylvania or as to that state's rule of conflicts with respect to such of the alleged wrongs as occurred in other states. In that situation, the only course open to a federal court is to look to the general law as being the most persuasive datum available for ascertaining the pertinent local law.

Upon reference to the general law, we find that, as between conflicting claimants to the same trade-mark, priority of appropriation ordinarily determines the

---

[1] See Fidelity Union Trust Co. v. Field, 311 U.S. 169, 177, 178, 61 S.Ct. 176, 85 L.Ed. 109; West v. American Telephone & Telegraph Co., 311 U.S. 223, 236, 237, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956.

right to the exclusive use thereof. McLean v. Fleming, 96 U.S. 245, 251, 24 L. Ed. 828. But, where two parties each independently employ the same mark upon goods of the same character, in separate markets wholly remote, one from the other, the matter of prior appropriation does not assume the legal significance which it otherwise would have, unless it appears that the second user intentionally selected the particular trade-mark with design inimical to the interests of the first user. United Drug Company v. Theodore Rectanus Company, 248 U.S. 90, 100, 39 S.Ct. 48, 63 L.Ed. 141; Hanover Star Milling Company v. Metcalf, 240 U.S. 403, 415, 36 S.Ct. 357, 60 L.Ed. 713; Tillman & Bendel, Inc. v. California Packing Corp., 9 Cir., 63 F.2d 498, 505. Except for this qualification of the general rule, the plaintiff under the circumstances of this case might well have been deemed to be an infringer of the defendants' trade-mark, for it clearly appears from the competent findings of the trial court that the defendant Lefco was the first to use the words "Adams Clothes" as a trade-mark for his sale of men's wearing apparel. However, the plaintiff argues that " * * * this use [by Lefco] could not later be enlarged by defendants so as to give them the right to use it as their business or firm name, *when meanwhile the name had been adopted by plaintiff as its business or firm name!*" (Appellant's Brief, p. 17.) Yet, clearly, where one is entitled to the use of a certain trade-mark, he is also entitled to advertise and display that mark. Otherwise, the right would be of little or no value. The defendants were free, therefore, to emblazon the words "Adams Clothes" in connection with the goods which they offered for sale to the public at large. Consequently, a restraint upon the defendants' use of the words as a part of their firm or business name could be of little real interest or satisfaction to the plaintiff. But, passing that, is the necessity for any such limitation indicated by the record in this case? We think not.

In Burt v. Tucker, 178 Mass. 493, 502, 59 N.E. 1111, 1113, 52 L.R.A. 112, 86 Am. St.Rep. 499, a manufacturer had used the word "Knickerbocker" on shoes which he manufactured for a period of two years and which he sold at wholesale and retail. He then went out of business for four years and discontinued the use of the name. The Supreme Judicial Court of Massachusetts, in an opinion by Chief Justice Holmes, held that, since upon later reestablishing his business he was entitled to resume the use of the name as a trademark on the shoes he intended to sell, there was no ground upon which the complainant could prevent him from incorporating the same word into his business name. The ruling in the Burt case, supra, which is peculiarly pertinent to the facts of the instant case, is an important part of the general law on the subject which, in the absence of an authoritative pronouncement by a court of Pennsylvania, we are disposed to accept as indicative of the law of that state.

█ Insofar as the wrongs alleged by the complaint occurred in Trenton, New Jersey, and Wilmington, Delaware, the respective law of those states becomes applicable under the general rule of conflicts. Restatement, Conflict of Laws (1934) § 378. The alleged wrongs in all of the states referred to were separate and distinct torts and not consequential or dependent, one upon another. Cf. Restatement, supra, § 377. In a like situation, a court of Pennsylvania would ascertain the relevant law of its sister states by taking judicial notice of their common law and statutes (Astrin v. Metropolitan Life Ins. Co., 341 Pa. 120, 125, footnote 2, 17 A.2d 887) or, otherwise, by informing itself of such laws in such manner as it deemed proper. See Pennsylvania Act of May 4, 1939, P.L. 42, §§ 1 and 2, 28 P.S. §§ 291, 292. So proceeding, we have been unable to find any pertinent statute or decision either of New Jersey or of Delaware and, again, are remitted to the general law as representative of what a Pennsylvania court would find to be the relevant law of those states.

█ Applying, therefore, to the facts of the instant case the general law, as found in Burt v. Tucker, supra, it follows that the defendants, being entitled to use the name "Adams Clothes" as a trademark, are also entitled to use those words as a part of their business or firm name. Accordingly, the court below was not in error when it ruled to that effect.

The appellant's argument that the defendants' business name, "Adams Clothes", is deceptively similar to the appellant's trade name, "Adam Hats", erroneously assumes that the appellant had a preemptive right to the word "Adam" or "Adams" in connection with the sale of men's apparel. As we have already indicated, here the defendants were the first users of the words

"Adams Clothes" as a trade-mark and there is neither a finding nor evidence to indicate that they ever have attempted or now are attempting to capitalize upon the business reputation and good will of the plaintiff. The cases which the appellant cites[2] are, clearly distinguishable from the present. In each of the cited cases the complainant was the first user of the name in contest and the offender appropriated the similar name in order to enjoy the reputation and good will which the prior user had built up. Such, however, is not the situation in the case before us, as the findings of the trial judge plainly indicate.

■ While so much is sufficient to dispose of this appeal, it is our further opinion that the court below was correct in holding that the plaintiff's conduct bars it from asserting a right to injunctive relief. True enough, mere delay alone does not constitute such a bar where ground for relief is shown to exist. Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526; McLean v. Fleming, supra, 96 U.S. at page 253, 24 L.Ed. 828. But, where the conduct of the complainant in respect of his particular grievance amounts to an abandonment of his right to relief or acquiescence in the alleged offender's course, such abandonment or acquiescence constitutes a bar to the granting of the relief sought. Saxlehner v. Eisner & Mendelson Company, 179 U.S. 19, 39, 21 S.Ct. 7, 45 L.Ed. 60. See also Fruit Industries, Limited v. Bisceglia Bros. Corp., 3 Cir., 101 F.2d 752, 754; and concurring opinion of Judge Learned Hand in Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, 412.

■ Here the defendants, as the users of a trade-mark to which they were unquestionably entitled, extended the words of the trade-mark to their business or trade name. The plaintiff forthwith instituted suit in the state court to restrain the defendants' extended use of the name. After a court hearing, upon the plaintiff's application for a preliminary injunction, the latter attempted to discontinue that suit. In this, it failed, owing to the defendants' active resistance based upon their insistence that the suit be proceeded with and determined. Thereafter the plaintiff did nothing, but chose to stand by, idly and silently, while the defendants from time to time invested large sums in expanding their business, store by store, as they had a right to do. Then five years after having instituted the suit in the state court and without having proceeded further with that suit, the plaintiff filed the present suit in federal court. In such circumstances the plaintiff's acquiescence in the defendants' conduct and its abandonment of any right it may have had in the matter seems too clear for argument. In the circumstances shown, it would be highly inequitable to permit the plaintiff now to assert a right to injunctive relief, particularly when its earlier suit in the state court is still pending.

The judgment of the District Court is affirmed.

---

[2] See Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962, 966; Duro Co. v. Duro Co., 3 Cir., 27 F.2d 339; Kotabs, Inc., v. Kotex Co., 3 Cir., 50 F.2d 810, 813; L. E. Waterman v. Gordon, 2 Cir., 72 F.2d 272, 273; Bond Stores, Incorporated, v. Bond Stores, Inc., 3 Cir., 104 F.2d 124; Wall v. Rolls-Royce of America, 3 Cir., 4 F.2d 333; Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674; Great Atlantic & Pacific Tea Co. v. A. & P. Co. Radio Stores, Inc., D.C.E.D.Pa., 20 F.Supp. 703; Stylepark Hats, Inc., v. Ruth Mitchell, Trading as Style Park Clothes Co., C.P.Ct. Phila. Co. (Pa.) No. 7 Sept. Term 1937, No. 1703 (unreported); Long's Hat Stores Corporation v. Long's Clothes, Inc., 1928, 224 App.Div. 497, 231 N.Y.S. 107.